**Affirmed and Opinion filed April 30, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

---

**NO. 14-12-00348-CV**
**NO. 14-12-00463-CV**

---

**SUSAN MEEK, M.D., Appellant/Cross-Appellee**

**V.**

**ROCKNE ONSTAD, INDIVIDUALLY AND D/B/A THE ONSTAD LAW FIRM, AND JOYCE STAMP LILLY, INDIVIDUALLY AND D/B/A JOYCE STAMP LILLY, R.N., J.D., P.C., Appellees/Cross-Appellants**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 07-DCV-156522**

---

## O P I N I O N

This case arises out of a dispute between two lawyers over attorney's fees. In the trial court the plaintiff recovered in quantum meruit against one of two defendants, but was awarded no attorney's fees for bringing that claim. Both the plaintiff and the defendant against whom judgment was rendered have appealed.

We conclude that the evidence is legally sufficient to support the jury's findings that a reasonable fee for the necessary services of the plaintiff's attorneys in this case is zero dollars, as there is evidence affirmatively showing that no attorney's services were needed. We also conclude that the plaintiff did not preserve error in the trial court as to her remaining appellate arguments. As to the defendant's appeal, we conclude that there is no evidence of a settlement offer that would stop the accrual of prejudgment interest and that the defendant did not preserve error in the trial court as to his remaining appellate arguments.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2000, William Boluss and attorney Joyce Stamp Lilly entered into a contingency-fee agreement regarding Lilly's representation of Boluss in the prosecution of a medical-malpractice claim. Lilly referred the case to attorney Rockne Onstad for handling and entered into a written agreement with Onstad regarding the division of the contingency fee. The agreement between Lilly and Onstad provided that Onstad would receive two-thirds of the attorney's fee and Lilly would receive one-third of the attorney's fee. Appellant/cross-appellee/plaintiff Susan Meek, M.D. is an attorney who provided legal services for various clients of Onstad. Meek provided services relating to the prosecution of Boluss's medical-malpractice claim.

In June 2001, Hulene Downey and Lilly entered into a contingency-fee agreement regarding Lilly's representation of Downey in the prosecution of a medical-malpractice claim. Onstad filed the suit, obtained an expert report, and engaged in some discovery on behalf of the client. While the Downey case was still in the discovery phase, Lilly and Onstad entered into a written agreement regarding the division of the contingency fee. The agreement between Lilly and Onstad provided that Onstad would receive two-thirds of the attorney's fee and

2

Lilly would receive one-third of the attorney's fee. Meek provided services relating to the prosecution of Downey's medical-malpractice claim.

Both the Boluss case and the Downey case settled. Following settlement in each case, Meek asserted that she was entitled to receive one half of Onstad's two-thirds of the contingency fee. Onstad denied that Meek had a right to any part of either contingency fee.

Meek filed suit against defendant/appellee/cross-appellant Joyce Stamp Lilly, individually and d/b/a Joyce Stamp Lilly, R.N., J.D., P.C. ("Lilly") and defendant/appellee/cross-appellant Rockne Onstad, individually and d/b/a The Onstad Law Firm ("Onstad"), asserting claims for breach of contract, as well as various tort claims. More than two years later and approximately two months before the case proceeded to trial, Meek, for the first time, asserted a quantum-meruit claim.

At trial, Meek testified that Onstad promised she would receive one half of Onstad's two-thirds of the contingency fee in the Boluss and Downey cases, in other words, one-third of the overall contingency fee in each case. Meek testified regarding the legal services that she claimed to have provided in each case. At the end of Meek's case-in-chief, Onstad and Lilly moved for a directed verdict as to Meek's quantum-meruit claim, arguing that there was no evidence of the reasonable value of the services Meek claimed to have provided. The trial court denied the motion. Onstad and Lilly then testified during the defendants' case-in-chief. After the close of the evidence, Onstad and Lilly did not renew their motion for directed verdict as to Meek's quantum-meruit claim.

The jury found that the neither Onstad nor Lilly had a written or oral agreement with Meek as to either the Boluss case or the Downey case. The jury also made the following findings:

3

- Meek performed compensable work for Onstad and Lilly for the representation of Boluss and for the representation of Downey.
- The reasonable value of the legal services provided by Meek for Onstad was $27,500 in the Boluss case and $2,750 in the Downey case.
- The reasonable value of the legal services provided by Meek for Lilly in each case was zero.
- A reasonable fee for the necessary services of Meek's attorneys in this case is zero dollars for both trial and appellate services.

Onstad and Lilly moved for judgment on the verdict. They tendered a proposed judgment to the trial court that omitted pre-judgment interest, attorney's fees, and court costs. Meek filed a motion requesting rendition of a judgment in which the trial court would award prejudgment interest, attorney's fees, and court costs. Eventually, the trial court rendered judgment that Meek take nothing against Lilly and that Meek recover $30,250, plus prejudgment interest, postjudgment interest, and costs, against Onstad.

Onstad and Lilly filed a motion to modify the judgment asserting complaints regarding prejudgment interest. Meek filed a motion for a partial new trial in which she argued she was entitled to a new trial regarding her reasonable and necessary attorney's fees for the prosecution of her quantum-meruit claim because the trial evidence is legally insufficient to support the jury's findings in this regard. The trial court denied both motions.

Meek timely appealed the trial court's judgment. Lilly and Onstad timely cross-appealed. Though both Lilly and Onstad have cross-appealed, the trial court rendered judgment that Meek take nothing against Lilly, and Lilly does not seek a more favorable judgment on appeal. Therefore, for convenience, we refer to the cross-appeal in the remainder of this opinion as if only Onstad had cross-appealed.

4

## II. STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). We must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* Jurors are the sole judges of witness credibility and the weight to give to testimony. *See id.* at 819.

## III. ISSUES AND ANALYSIS

**A. Did the trial court err in failing to instruct the jury and return the jury for further deliberations based on alleged conflicts in the jury's answers?**

Under her first four appellate issues, Meek argues that the trial court erred in failing to comply with its alleged mandatory duty under Texas Rule of Civil Procedure 295 to instruct the jury and return it for further deliberations based on (1) an alleged conflict between the jury's liability findings on Meek's quantum-meruit claims against Lilly and the jury's answer of "zero" as to each of the damages questions regarding these claims and (2) an alleged conflict between the jury's liability and damage findings regarding her quantum-meruit claims against Onstad and the jury's findings that a reasonable fee for the necessary services of Meek's attorneys in this case is zero dollars. Under these issues, Meek also argues that, even if the trial court has no such mandatory duty, Meek preserved error regarding the conflicts she alleges in the jury's answers by means of the trial court's denial of her motion for partial new trial.

Texas Rule of Civil Procedure 295, entitled "Correction of Verdict," provides as follows:

5

> If the purported verdict is defective, the court may direct it to be reformed. If it is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations.

Tex. R. Civ. P. 295. Meek notes the use of "shall" in this rule and the failure of the rule to mention any requirement that a party complain of any conflict in the jury's answers. Under this rule, Meek argues, the existence of any conflict in the jury's answers imposes a mandatory duty on the trial court to instruct the jury regarding the nature of the conflict, to provide the jury such additional instructions as may be proper, and to retire the jury for further deliberations, even if there is no complaint from any party regarding any alleged conflict in the jury's answers. Meek has not cited any case adopting such a construction of Rule 295, and research has not revealed one.

This court has not held that Rule 295 imposes such a mandatory duty; instead, this court has held that a party waives any complaint regarding any alleged conflict in the jury's answers by failing to voice this complaint before the jury is discharged. *See Swallow v. QI, LLC*, No. 14-10-00859-CV, 2012 WL 952246, at *6 (Tex. App.—Houston [14th Dist.] Mar. 20, 2012, pet. denied)(mem. op.); *Bejjani v. TRC Servs., Inc.*, No. 14-08-00750-CV, 2009 WL 3856924, at *5 (Tex. App.—Houston [14th Dist.] Nov. 19, 2009, no pet.)(mem. op.); *Lundy v. Masson*, 260 S.W.3d 482, 495 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The rationale behind this rule is that, if a party voices such a complaint before the jury is discharged, the trial court may take action to resolve the conflict through instruction and further jury deliberations, as contemplated in Rule 295. *See Lundy*, 260 S.W.3d at 495 & n.13.

6

Under Rule 295, if a jury verdict is incomplete, or not responsive to the questions contained in the court's charge, or the answers to the questions are in conflict, the court shall instruct the jury in writing and in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations. *See* Tex. R. Civ. P. 295. Rule 295 does not contain an express requirement that a party must complain about an alleged incompleteness, nonresponsiveness, or conflict in the jury's answers, nor does the rule contain an express statement that a trial court must take such action even if no party complains of such problems in the jury's answers. *See id*. This court already has determined that such a complaint must be lodged before the jury is discharged, so that the expenditure of resources for another trial may be avoided through further deliberations of the jury that issued the verdict containing the incompleteness, unresponsiveness, or conflict. *See Swallow*, 2012 WL 952246, at *6; *Bejjani*, 2009 WL 3856924, at *5; *Lundy*, 260 S.W.3d at 495. Meek did not complain about any alleged conflict in the jury's answers before the trial court discharged the jury. Accordingly, Meek failed to preserve error regarding any alleged conflict in the jury's answers. *See Swallow*, 2012 WL 952246, at *6; *Bejjani*, 2009 WL 3856924, at *5; *Lundy*, 260 S.W.3d at 495.

Meek argues that, even if the trial court did not have a mandatory duty to resolve conflicts in the jury's answers by ordering further jury deliberations, Meek's complaints in her motion for partial new trial were sufficient to preserve error. According to Meek, a conclusion that a party waives any complaint regarding an alleged conflict in the jury's answers by failing to voice this complaint before the jury is discharged would conflict with language from Rule of Civil Procedure 324. *See* Tex. R. Civ. P. 324(b)(3),(4) (West 2014). The part of

7

this rule upon which Meek relies states that a motion for new trial is a prerequisite to complaints on appeal that a jury finding is against the overwhelming weight of the evidence, or that the damages found by the jury are inadequate or excessive. *See id.* But, a complaint that there is a conflict in the jury's answers is not the same as a complaint that a jury finding is against the overwhelming weight of the evidence or that the damages found by the jury are inadequate or excessive.[1] The current version of Rule 324 does not require that a party file a motion for new trial to complain on appeal that there is an alleged conflict in the jury's answers.[2] *See* Tex. R. Civ. P. 324. In any event, even if Rule 324 provided that filing a motion for new trial is a prerequisite to such an appellate complaint, that rule would not necessarily mean that filing a motion for new trial is the only prerequisite or that voicing this complaint before the jury is discharged is not required. Under binding precedent, a party waives any complaint regarding an alleged conflict in the jury's answers by failing to assert this complaint before the trial court discharges the jury.

---

[1] In her motion for partial new trial, Meek did not assert that any jury finding is factually insufficient or against the overwhelming weight of the evidence or that any damage finding regarding her quantum-meruit claims is inadequate. In her new-trial motion, Meek did complain of conflicts in the jury's answers, and she asserted that she was entitled to a new trial because no evidence supports the jury's findings regarding attorney's fees.

[2] Meek cites *Saint Louis Southwestern Railway Company v. Duke* for the proposition that a motion for new trial is required to preserve error regarding an alleged conflict in the jury's answers, and Meek suggests that this case supports the proposition that raising this complaint for the first time in a motion for new trial is sufficient to preserve error. *See* 424 S.W.2d 896, 897–98 (Tex. 1967). The *Duke* case supports the former proposition under a version of Rule 324 that is no longer in effect, but the *Duke* case does not support the latter proposition. *See id.* In *Duke*, the appellant obtained a ruling on his objection that the jury's answers were in conflict before the jury was discharged; nonetheless, the *Duke* court held that the appellant failed to preserve error because the appellant did not voice this complaint again in a motion for new trial. *See id.* The *Duke* court relied on language in a former version of Rule 324 that is not in the current version of that rule. *See id.* The *Duke* court did not address whether complaints regarding conflicts in the jury's answers may be preserved solely through a motion for new trial. *See id.* The *Duke* case is not on point.

*See Swallow*, 2012 WL 952246, at \*6; *Bejjani*, 2009 WL 3856924, at \*5; *Lundy*, 260 S.W.3d at 495. Thus, Meek's complaints in her motion for partial new trial were untimely and did not preserve error on this point. *See Swallow*, 2012 WL 952246, at \*6; *Bejjani*, 2009 WL 3856924, at \*5; *Lundy*, 260 S.W.3d at 495.

For the foregoing reasons, we overrule Meek's first, second, third, and fourth issues.

**B.  Is the evidence legally sufficient to support the jury's findings regarding attorney's fees?**

In her fifth and final issue, Meek asserts that the trial court abused its discretion by denying her motion for partial new trial on the issue of the jury's findings that a reasonable fee for the necessary services of Meek's attorneys in this case is zero dollars. In the trial court and on appeal, Meek sought a new trial regarding attorney's fees as to both Lilly and Onstad. But, Meek seeks to recover attorney's fees under Chapter 38 of the Civil Practice and Remedies Code, and to do so, Meek, among other things, must prevail on a claim covered by Chapter 38 and recover damages. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (West 2014); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009). The trial court rendered judgment that Meek take nothing against Lilly, and we already have overruled all of Meek's appellate issues that possibly could lead to a recovery of damages by Meek against Lilly on any of Meek's claims. Therefore, at this juncture, there is no basis for Meek to recover attorney's fees against Lilly under Chapter 38. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (West 2014); *MBM Fin. Corp.*, 292 S.W.3d at 666; *Kennebrew v. Harris*, Nos. 14–12–01015–CV, 14–12–01044–CV,—S.W.3d—,—, 2014 WL 848918, at \*8–9 (Tex. App.—Houston [14th Dist.] Mar. 4, 2014, no pet. h.). Accordingly, we will address Meek's arguments only as they pertain to her request for attorney's fees against Onstad.

Under her fifth issue, Meek asserts that the trial court erred in failing to

award attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code regarding her quantum-meruit claims against Onstad because the award of attorney's fees under this statute is not discretionary. Meek also asserts she was entitled to a new trial on attorney's fees because there was no evidence to support the jury's findings regarding attorney's fees.[3]

Meek did not recover on any of her breach-of-contract claims; therefore, she is not entitled to recover attorney's fees under Chapter 38 based on these claims. *See* Tex. Civ. Prac. & Rem. Code § 38.001. Meek did recover on her quantum-meruit claims against Onstad, and these claims are covered by Chapter 38. *See id.*; *Jaramillo v. Portfolio Acquisitions, LLC*, No. 14-08-00939-CV, 2010 WL 1197669, at * 8 (Tex. App.—Houston [14th Dist.] Mar. 30, 2010, no pet.) (mem. op.). Meek argues that, if she is entitled to attorney's fees under Chapter 38 based on these claims, she must be awarded some amount of fees because the award of fees is not discretionary under Chapter 38. Meek is correct that the trial court has no discretion to deny recovery of attorney's fees under Chapter 38 to a party who has satisfied the prerequisites for recovering attorney's fees under this statute. *See* Tex. Civ. Prac. & Rem. Code § 38.001; *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). Nonetheless, a fact finding that a reasonable fee for the necessary services of a party's attorneys in a case is zero dollars may be supported by sufficient evidence if there is evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value. *See Midland*

---

[3] On appeal, Meek asserts that the trial court erred in denying her motion for partial new trial regarding the jury's attorney's fee findings and that these findings are "inadequate." In that motion, the only challenges regarding attorney's fees that Meek preserved were that an award of attorney's fees is not discretionary and that there was no evidence to support the jury's findings regarding attorney's fees. We presume, without deciding, that under a liberal construction of Meek's appellate brief, Meek is arguing on appeal that there is no evidence to support the jury's findings regarding attorney's fees. To the extent Meek is arguing that the attorney's fees found by the jury are inadequate in some other respect, Meek failed to preserve error on this point in her motion for partial new trial.

*W. Bldg., L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009) (per curiam); *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 787 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Thus, an award of zero fees under Chapter 38 may be appropriate under certain circumstances, even though the trial court has no discretion to deny recovery of fees under this statute.  *See Midland W. Bldg., L.L.C.*, 300 S.W.3d at 739; *Cale's Clean Scene Carwash, Inc.*, 76 S.W.3d at 787.

In Question 17, the jury was asked "What is a reasonable fee for the necessary services of plaintiff's attorneys in this case, stated in dollars and cents, if any?"  The jury then was instructed to answer with an amount for each of the following: (1) for preparation and trial, (2) for post-judgment legal work, (3) for a successful appeal the court of appeals, (4) for a successful rehearing at the court of appeals, (5) for a successful appeal to the Supreme Court of Texas, and (6) for a successful rehearing at the Supreme Court of Texas.  The jury answered zero dollars for each item.  At the charge conference, no party objected to the form of this question.  Therefore, this court measures the sufficiency of the evidence using the charge given.  *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfield Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (reviewing sufficiency of evidence based on jury instruction to which no objection was asserted and rejecting various arguments based on different legal standards).

An attorney's fees expert testified regarding the reasonable attorney's fees for the services rendered by Meek's attorneys.  We presume for the sake of

argument that this expert testified as to what he thought a reasonable fee was for each of the six categories of services listed in the jury charge. Nonetheless, the expert did not testify as to why he thought the services of Meek's attorneys were necessary, nor did he address whether the services of Meek's attorneys would be necessary if the jury found there was no oral or written contract between Meek and Onstad, and the only possible recovery Meek had against Onstad was based upon quantum meruit.

Onstad testified that, before Meek retained attorneys, she contacted Onstad and demanded a share of the contingency fees in the Boluss and Downey cases. According to Onstad, he disagreed that Meek was entitled to any share of these contingency fees, but he told her he would consider paying her for her time if she submitted to him proof of the time she spent and the expenses she incurred in these cases. Onstad stated that Meek never provided him with a listing of the hours she worked on these cases or the expenses she incurred so as to demonstrate the value of her services, and that she later hired an attorney to prosecute claims against Onstad. Consistent with this testimony, Onstad sent a letter dated October 3, 2003, to Meek in which Onstad asserted that Meek never had any interest in the contingency fee in either the Boluss case or Downey case. Still, in the letter, Onstad stated that he was amenable to paying Meek reasonable compensation for the hours she worked, but that he could not do so until Meek provided Onstad with a description of her services and the amount of hours she had worked. The jury is the sole judge of witness credibility, and we presume the jury found Onstad's testimony in this regard credible.[4] *See City of Keller*, 168 S.W.3d at 819.

---

[4] Meek did not testify at trial regarding the number of hours that she worked on the Boluss case or the Downey case or regarding the reasonable value of her services. The only testimony at trial regarding the amount of hours Meek worked and the reasonable value of her legal services came from Onstad during the defendants' case-in-chief.

12

Many Texas statutes provide for the recovery of reasonable attorney's fees for the successful prosecution of a claim, and it is unusual for there to be evidence that would enable reasonable and fair-minded people to find that litigation of the claim in question was unnecessary. Nonetheless, under the applicable standard of review and based on the peculiar circumstances reflected by the record in this case, the evidence is legally sufficient to support a finding by the jury that none of the services of Meek's attorneys were necessary because the only basis for her recovery against Onstad is quantum meruit, and Onstad was willing to pay her the reasonable value of her services before she hired attorneys to prosecute her claims. *See Lawrence v. Boles*, 631 S.W.2d 764, 766–67 (Tex. App.—Tyler 1981, no writ) (concluding that jury was within its right to deny recovery of attorney's fees to plaintiff in suit on promissory note because there was evidence that the suit was filed unnecessarily, without requiring evidence that defendant offered to pay the plaintiff a specific amount); *Crounse v. State Farm Mut. Auto. Ins. Co.*, 336 S.W.3d 717, 720–22 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence was factually sufficient to support the jury's findings that zero dollars was a reasonable fee for the necessary services of plaintiff's attorney because the jury reasonably could have found that plaintiff's only valid claim could have been paid without the need to file suit).

Based upon this finding, the trial court properly could render judgment that Meek recover no attorney's fees under Chapter 38, even though Meek recovered actual damages on a quantum-meruit claim covered by Chapter 38. *See Midland W. Bldg., L.L.C.*, 300 S.W.3d at 739; *Cale's Clean Scene Carwash, Inc.*, 76 S.W.3d at 787. The trial court did not err by impliedly concluding that Meek was not entitled to a new trial as to her attorney's-fees request against Onstad because the evidence is legally sufficient to support the jury's findings regarding attorney's

13

fees. *See Midland W. Bldg., L.L.C.*, 300 S.W.3d at 739; *Cale's Clean Scene Carwash, Inc.*, 76 S.W.3d at 787; *Crounse*, 336 S.W.3d at 720–22; *Lawrence*, 631 S.W.2d at 766–67. Accordingly, we overrule Meek's fifth issue.

Having overruled all of Meek's issues, we now turn to Onstad's cross-appeal.[5]

## C.    Did the cross-appellant waive his motion for directed verdict?

In the third issue[6] in his cross-appeal, Onstad asserts that the trial court erred in denying his motion for directed verdict as to Meek's quantum-meruit claims against him at the end of Meek's case-in-chief.[7] In this motion, Onstad asserted that the evidence was legally insufficient to show the reasonable value of Meek's services. The trial court denied this motion. Onstad and Lilly then presented evidence in their case-in-chief. At the close of evidence, Onstad did not renew his motion for a directed verdict. A motion for directed verdict at the close of the plaintiff's case-in-chief is insufficient to preserve a complaint of legal

---

[5] On appeal, Onstad asserts that, in the trial court, Meek requested rendition of the judgment that the trial court rendered and that Meek did not preserve her right to challenge that judgment on appeal. Onstad argues that, based on this conduct, Meek waived her right to complain on appeal regarding any alleged error in the judgment. At times, Onstad appears to assert that this argument, if successful, would deprive this court of appellate jurisdiction over Meek's appeal. But, if this argument were successful, it only would provide a basis for overruling all of Meek's appellate issues; it would not deprive this court of jurisdiction. *See Litton Indus. Products, Inc. v. Gammage*, 668 S.W.2d 319, 321–24 (Tex. 1984). Because we have overruled these issues for the reasons stated above, we need not and do not address this argument by Onstad. Likewise, we need not and do not address the parties' various arguments regarding the presentment requirement under Texas Civil Practice and Remedies Code section 38.002(2). *See* Tex. Civ. Prac. & Rem. Code § 38.002 (West 2014).

[6] In his first and second issues, Onstad does not challenge the trial court's judgment; instead, he presents defensive arguments against Meek's appellate challenges. In the previous footnote, we concluded that we need not address these arguments.

[7] Onstad did not raise this legal-insufficiency argument by means of a motion for judgment notwithstanding the verdict, an objection to the submission of a jury question, a motion to disregard a jury finding, or a motion for new trial, nor does he contend on appeal that he did so.

insufficiency of the evidence if a defendant offers evidence after denial of this motion. *See Liberty Mut. Ins. Co. v. Heitkamp Swift Architects, Inc.*, No. 14-12-00873-CV, 2014 WL 261010, at *1 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, no pet. h.)(mem. op.); *Dalbosco v. Seibert*, No. 14-11-00429-CV, 2012 WL 1795108, at *4–5 (Tex. App.—Houston [14th Dist.] May 17, 2012, pet. denied). If a defendant moves for a directed verdict after the plaintiff rests but thereafter elects not to stand on his motion for verdict, and offers evidence in his own case, that defendant waives his motion for directed verdict unless he re-urges the motion at the close of the evidence. *See Liberty Mut. Ins. Co. v.* 2014 WL 261010, at *1; *Dalbosco*, 2012 WL 1795108, at *4–5. After the trial court denied Onstad's motion for directed verdict at the end of Meek's case-in-chief, Onstad elected not to stand on his motion for verdict, and instead offered evidence in his own case. At the close of the evidence, though he asserted motions for directed verdict raising other issues, Onstad did not re-urge the motion for directed verdict in which he complained that the evidence was legally insufficient to show the reasonable value of Meek's services. Thus, Onstad waived this motion for directed verdict. *See Liberty Mut. Ins. Co. v.* 2014 WL 261010, at *1; *Dalbosco*, 2012 WL 1795108, at *4–5. Accordingly, we overrule Onstad's third issue.

**D.      Did the trial court err in calculating prejudgment interest?**

In the fourth issue in his cross-appeal, Onstad asserts two challenges to the trial court's calculation of prejudgment interest.[8] In the first challenge, Onstad asserts the trial court erred in concluding that prejudgment interest on Meek's quantum-meruit claims against Onstad began to accrue before the date on which Meek first pleaded a claim for quantum-meruit. Although Onstad raised other

---

[8] Onstad presents a third challenge for the first time in his reply brief. Onstad waived this argument by not raising it in his opening appellate brief. *See Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

arguments regarding prejudgment interest in his motion to modify judgment in the trial court, Onstad did not raise this argument in the motion, nor did he voice this complaint in the trial court by any other means. Therefore, Onstad failed to preserve error in the trial court regarding his first argument. *See Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987) (per curiam) (stating that error regarding prejudgment interested must be preserved); *Henry v. Thompson*, No. 01-01-01211-CV, 2003 WL 1091766, at \*5 (Tex. App.—Houston [1st Dist.] Mar. 13, 2003, no pet.) (holding appellant failed to preserve error in the trial court as to complaint regarding prejudgment interest) (mem. op.).

In his second challenge to the trial court's calculation of prejudgment interest, Onstad asserts that the trial court erred in awarding any amount of prejudgment interest on Meek's quantum-meruit claims against Onstad because Onstad allegedly made a written offer of settlement to Meek on October 3, 2003 (the "October Communication"), to which Meek never responded. We presume, without deciding, that Onstad preserved error as to this complaint in his motion to modify judgment in the trial court. In that motion, Onstad asserted that Texas Finance Code section 304.105(a) applies to the calculation of prejudgment interest on Meek's quantum-meruit claim. *See* Tex. Fin. Code Ann. § 304.105(a) (West 2014) (stating that, "[i]f judgment for a claimant is equal to or less than the amount of a settlement offer of the defendant, prejudgment interest does not accrue on the amount of the judgment during the period that the offer may be accepted"). *See also* Tex. Fin. Code Ann. § 304.107 (West 2014) (stating that, "[i]f a settlement offer does not provide for cash payment at the time of settlement, the amount of the settlement offer for the purpose of computing prejudgment interest is the cost or fair market value of the settlement offer at the time it is made").

Onstad claims that the October Communication is a settlement offer that

precludes Meek from recovering any prejudgment interest on her quantum-meruit claims against him. In the only part of the October Communication that arguably could constitute a settlement offer, Onstad states as follows:

> I have made efforts to have you advise me of your time and expenses in the Boluss matter, and you have refused to do so. I have always been amenable to providing you reasonable per diem compensation, but until you provide me with a recitation of your time and what you did, I am not able to do anything.

We presume, without deciding, that Texas Finance Code section 304.105(a) has been adopted by courts for use in calculating equitable prejudgment interest awards like those that apply to quantum-meruit claims. In the October Communication, Onstad requests information from Meek regarding her work and states Onstad is amenable to pay her for her services. Nonetheless, Onstad states that he is not able to do anything until he receives the information he is requesting. In the October Communication, Onstad asserts a willingness to pay Meek and indicates that he will make a settlement offer after he receives the requested information. Nonetheless, Onstad does not offer to settle with Meek. We conclude that the October Communication is not a settlement offer, and therefore does not provide a basis to delay or stop the accrual of prejudgment interest under Texas Finance Code section 304.105(a).[9] *See Figueroa v. Davis*, 318 S.W.3d 53, 68 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding appellant failed to prove one of the settlement offers that he alleged tolled the accrual of prejudgment interest under Texas Finance Code section 304.105). In addition, Onstad failed to prove the amount of the alleged settlement offer, which is necessary to determine

---

[9] Whether the October Communication is a settlement offer is a different issue from whether the trial evidence is legally sufficient to support a finding that the services of Meek's attorneys were not necessary. Though the October Communication is not a settlement offer, the evidence is legally sufficient to support the jury's attorney's-fees findings for the reasons discussed in section III.B., above.

17

whether accrual of prejudgment interest is stopped or tolled under Texas Finance Code section 304.105(a). *See* Tex. Fin. Code Ann. § 304.105(a); *Figueroa*, 318 S.W.3d at 66–68. Thus, even if Onstad preserved error as to this complaint in his motion to modify judgment in the trial court and even if Texas Finance Code section 304.105(a) has been adopted by courts for use in calculating equitable prejudgment interest awards, the trial court did not err in denying Onstad's argument in the motion to modify that prejudgment interest should not accrue based on this statute.

For the foregoing reasons, we overrule Onstad's fourth and final issue.

## IV. CONCLUSION

The evidence is legally sufficient to support a finding by the jury that none of the services of Meek's attorneys were necessary because the only basis for her recovery against Onstad is quantum meruit, and Onstad was willing to pay her the reasonable value of her services before she retained attorneys to prosecute her claims. The trial court did not err by impliedly concluding that Meek was not entitled to a new trial as to her attorney's-fees request against Onstad because the evidence is legally sufficient to support the jury's findings regarding attorney's fees. Even if Onstad preserved error as to the second complaint under his fourth issue and even if Texas Finance Code section 304.105(a) has been adopted by courts for use in calculating equitable prejudgment interest awards, the trial court did not err in rejecting the argument in Onstad's motion to modify that prejudgment interest should not accrue based upon this statute.

18

The trial court's judgment is affirmed.


/s/     Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison.